UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 09-18-GWU

TUNIS SMITH, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Tunis Smith brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

        Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

09-18 Tunis Smith

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

09-18  Tunis Smith

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  <u>Id.</u>  Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

    Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

    One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

09-18  Tunis Smith

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Smith, a 45-year-old former coal miner and sawmill off-bearer with a high school education, suffered from impairments related to degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and left eye blindness. (Tr. 19, 25-26). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 21, 25). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 26-27). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 26).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Leah Salyers included such restrictions as (1) an ability to lift no more than 25 pounds occasionally and 10 pounds frequently; (2) a need to alternate sitting and standing in one-hour intervals; (3) an inability to more than occasionally climb, stoop, crouch, kneel or crawl; (4) an inability to more than occasionally reach overhead; (5) an inability to ever climb ladders, ropes or scaffolds; (6) a need to avoid exposure to unprotected heights and dangerous, moving machinery; and (7) an inability to

perform work requiring peripheral vision to the left and fine visual acuity.  (Tr. 862-863).  In response, the witness identified a significant number of light and sedentary level jobs which could still be performed (Tr. 864).  Therefore, assuming that the vocational factors considered by Salyers fairly characterized Smith's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Smith was found capable of performing a restricted range of heavy level work in an administrative decision which became final on August 21, 2003.  (Tr. 43-51).  This decision was not reopened by the current ALJ.  (Tr. 17).  Principles of <u>res judicata</u> require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application.  <u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837, 842 (6th Cir. 1997).  Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . ."  The ALJ's findings of a restricted range of light level work is in accord with these directives.

Dr. Joseph Koenigsmark examined Smith and noted a diagnostic impression of an old cervical injury and fusion at C6 with probable osteoarthritic changes and probable osteoarthritic changes in the lower lumbar region.  (Tr. 309).  The doctor

found no motor, sensory or reflex losses during the physical examination. (Tr. 310). The examiner opined that the plaintiff should not perform heavy lifting but could perform submaximal lifting, sitting, standing and alternating between the two. (Tr. 309). The ALJ's findings were compatible with this opinion.

Dr. Robert Marshall reviewed the record in July of 2007 and completed interrogatories submitted by the ALJ. Dr. Marshall indicated that Smith's condition did not meet or equal the requirements of one of the Listing of Impairments sections. (Tr. 732-733). Dr. Marshall completed a Medical Assessment of Ability to do Work-Related Activities Form upon which he noted an inability to lift more than 25 pounds and 10 pounds on a frequent basis. (Tr. 737). The doctor felt that the claimant could stand or walk for a total of six hours a day in one- to two-hour intervals. (Tr. 738). Smith would have no restriction with regard to sitting. (Id.). The plaintiff would be able to climb ramps and stairs, stoop, crouch, kneel, and crawl occasionally. (Id). The doctor indicated that the claimant should not climb ropes. (Id). Dr. Marshall also reported a limitation concerning vision. (Tr. 739). The doctor indicated a question mark with regard to exposure to humidity and vibration. (Id). The ALJ's hypothetical question was essentially consistent with this opinion.

Dr. Sudideb Mukherjee and Dr. Parandhamulu Saranga each reviewed the record and completed Physical Residual Functional Capacity Assessment Forms. Each physician opined that Smith would be restricted from more than occasionally climbing ladders, ropes or scaffolds and crawling, and would have a limited ability

9

09-18  Tunis Smith

to reach and a need to avoid exposure to hazards. (Tr. 330-338, 490-498). The ALJ's findings were also consistent with these opinions.

Dr. Rao Vempaty, a treating source, identified extremely severe physical restrictions which would preclude performance of a full range of sedentary level work. (Tr. 347-350, 353-356). The ALJ rejected this opinion as binding because he did not believe that these restrictions were well supported by objective medical data. (Tr. 25). The ALJ noted that despite the severe limitations, Dr. Vempaty found a normal gait and no evidence of sensory loss or motor deficit. (Tr. 25, 358). The doctor later noted no focal neurological deficit in treatment records from October, 2006. (Tr. 25, 752). The ALJ noted that Dr. Vempaty did not indicate he had relied upon an MRI scan or other laboratory findings in reaching his conclusions. (Tr. 25). The doctor's findings were also far more severe than those of the other medical sources of record. (Tr. 24-25). Therefore, under these circumstances, the court finds that the ALJ properly rejected Dr. Vempaty's opinion.

Smith asserts that the ALJ erred in rejecting the opinion of Dr. Vempaty. The plaintiff notes that 20 C.F.R. § 416.912(e) requires an ALJ to recontact a treating source to see if additional information is readily available when their opinion is deemed inadequate because the report contains a conflict or ambiguity that must be resolved, does not contain all the necessary information, or appears to not have relied upon medically acceptable clinical or and laboratory diagnostic techniques.

09-18  Tunis Smith

Since the ALJ deemed the doctor's report inadequate, he should have recontacted the physician.

The court notes that Sixth Circuit Court of Appeals case law on this point is quite sparse.  in the unpublished opinion of Littlepage v. Chater, 1998 U.S. Lexis 688 (6th Cir. January 14, 1998), the court determined that the duty to recontact was not triggered when it was apparent from the record that all the treatment notes and information upon which the doctor based his opinion were already before the ALJ. In the present action, Smith has failed to cite any evidence which suggests that the ALJ did not see all of the information upon which Dr. Vempaty based his decision. While the plaintiff cites the ALJ's statement that the lack of MRI or other testing made the doctor's report inadequate (Tr. 25), he provides no evidence that such information had actually been available to the physician and not seen by the ALJ. While the evidence provided from Dr. Vempaty was not sufficient for the ALJ to rule in the plaintiff's favor, it was not inadequate for the ALJ to make a decision. Therefore, the court must reject the plaintiff's argument.

The ALJ properly determined that Smith did not suffer from a "severe" mental impairment.  The plaintiff sought treatment at the Mountain Comprehensive Care Center where he was diagnosed as suffering from a bipolar disorder.  (Tr. 395). However, specific mental limitations were not indicated.  (Tr. 388-489, 762-794). The claimant's Global Assessment of Functioning (GAF) was rated at 65 in July of 2006.  (Tr. 788).  Such a GAF suggests the existence of only "mild" psychological

symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.

Smith underwent two mental health examinations during the processing of this claim.  Psychologist Phil Pack examined him in September of 2004 and diagnosed possible malingering.  (Tr. 304).  Pack was unable to rate the claimant's functioning ability due to the concerns about malingering.  (Id.).  Psychologist Timothy Carbary examined the plaintiff in August of 2006 and also concluded that he was unable to determine his mental status due to questionable effort.  (Tr. 640-643).  The ALJ cited these reports as reasons why he did not believe Smith's mental problems were "severe."  (Tr. 18-19).

Psychologists Jane Brake and Laura Cutler each reviewed the record and opined that Smith was "moderately" limited in his ability to perform activities within a schedule, maintain regular attendance and being punctual within customary tolerances and interacting with the general public.  (Tr. 326-327, 513-514).  These opinions suggest the existence of a "severe" mental impairment.  Cutler only indicated that she was adopting the opinion of Brake.  (Tr. 515).  Brake noted that the plaintiff's malingering at the consultative examination indicated that there was not new medical evidence.  (Tr. 328).  However, the reviewer stated that she was adopting the moderate mental limitations found in the prior denial decision.  (Id.).  This finding appears in error because the ALJ in the August, 2003 denial decision did not find that the claimant suffered from any mental restrictions.  (Tr. 50).

09-18  Tunis Smith

Therefore, under these circumstances, the ALJ properly determined that the plaintiff's mental problems were not "severe."

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 19th day of November, 2009.

Signed By:

_G. Wix Unthank_

United States Senior Judge